Related Case Number(s):
5:26-cv-00090 (N.D.N.Y.)
1:26-cv-00188 (W.D. Tex.)
1:26-cv-00189 (W.D. Tex.)
Judge(s):
U.S. Magistrate Judge Therese Wiley Dancks (NDNY, prior)
U.S. District Judge (to be assigned, NDNY)

U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
Jan 28 - 2026
John M. Domurad, Clerk

IX. IF THIS IS AN APPEAL (DO NOT APPLY)
☐ District Court   ☐ Bankruptcy

Civil Action No. 5:26-cv-144 (ECC/TWD)

X. SIGNATURE
I certify that the information above is true and correct to the best of my knowledge.

/s/ Rogelio Cruz, Jr.
Rogelio Cruz, Jr.
Plaintiff, Pro Se
Date: January 28, 2026

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

---

ROGELIO CRUZ, JR.,

Plaintiff,

v.

CLERK OF COURT, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, in official and individual capacities;
CLERK'S OFFICE INTAKE, U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA;
ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS;
A. GARCIA, DPS-CSO, in official and individual capacities;

Defendants.

---

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

---

INTRODUCTION

1. This action arises from a deliberate and systemic obstruction of access to the federal courts by ministerial officers entrusted with safeguarding that access.

2. Plaintiff is a 100% Permanently and Totally Disabled United States Marine Corps veteran who timely tendered a complete civil complaint, with signature, contact information, and supporting documentation, to the Clerk's Office of the United States District Court for the District of Columbia ("DDC").

3. Defendants received, read, evaluated, and responded to Plaintiff's filings via email, yet refused to docket the action, imposed non-statutory requirements, erased filing dates, and threatened future non-response after Plaintiff asserted disability-based access rights.

4. Defendants' conduct did not involve judicial discretion.
No judge was assigned.
No case number was issued.
No adjudication occurred.

5. Instead, Defendants abdicated ministerial duty, substituted internal guidance for federal law, and constructed a self-sealing access denial loop that prevented Plaintiff from ever reaching a judicial officer.

6. This was not error.
This was policy in action.

---

JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and under the Fifth Amendment to the United States Constitution.

8. This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and to compel performance of ministerial duties unlawfully withheld.

9. Venue is proper in this District because Plaintiff has pending and transferred matters here, the injury is ongoing, and this Court is a constitutionally proper forum to adjudicate systemic denial of federal court access where other districts have already demonstrated divergent treatment of identical filings.

---

PARTIES

10. Plaintiff Rogelio Cruz, Jr. is a United States citizen, resident of Texas, and a 100% Permanently and Totally Disabled Marine Corps veteran.

11. Defendant Clerk of Court, U.S. District Court for the District of Columbia, is responsible for the supervision of intake and docketing functions and is sued in both official and individual capacities.

12. Defendant Clerk's Office Intake, U.S. District Court for the District of Columbia, is the operational unit that received, evaluated, rejected, and refused to docket Plaintiff's filings.

13. Defendant Administrative Office of the United States Courts ("AOUSC") promulgates administrative guidance and communications relied upon by district clerks to shape intake policy and responses to disability-based access requests.

14. Defendant A. Garcia, DPS-CSO, is the identified signatory of an "official response from this agency" denying applicability of the ADA and Rehabilitation Act to federal court access and threatening non-response to future inquiries. Defendant Garcia is sued in both official and individual capacities.

---

FACTUAL ALLEGATIONS

A. Plaintiff's Tendered Filing

15. On December 1, 2025, Plaintiff transmitted to DDC Intake a complete civil action package, including:

A signed complaint;

Civil cover sheet;

Application to proceed in forma pauperis;

Disability documentation;

Exhibits.

16. The submission bore Plaintiff's name, signature, address, email address, and telephone number, satisfying Fed. R. Civ. P. 11(a) in full.

B. Defendants Read and Evaluated the Filing

17. Defendants acknowledged receipt of Plaintiff's submission.

18. Defendants identified alleged deficiencies, quoted federal rules, cited internal policies, and issued instructions for resubmission.

19. These acts required Defendants to read and assess the content of Plaintiff's filing.

20. Defendants therefore cannot claim ignorance, automation, or lack of awareness.

C. The "Original Signature" Pretext

21. Defendants rejected Plaintiff's filing on the ground that it lacked "original signatures," citing Rule 11(a).

22. Rule 11(a) does not require ink signatures, physical originals, or in-person submission.

23. Attorneys filing through CM/ECF routinely satisfy Rule 11(a) with electronic "/s/ Name" signatures.

24. Defendants nonetheless imposed a stricter, unwritten requirement only on pro se litigants, explicitly prohibiting "/s/" signatures for Plaintiff.

25. This requirement appears nowhere in the Federal Rules of Civil Procedure.

26. Defendants refused to docket the case and erased the filing date rather than issuing a curable deficiency notice.

D. The AO / A. Garcia Policy Injection

27. After Plaintiff invoked disability-based access rights, DDC Intake transmitted what it labeled an "official response from this agency," signed by A. Garcia, DPS-CSO, dated April 20, 2023.

28. That response stated, verbatim, that:

"The federal judiciary is not subject to the Americans with Disabilities Act and Section 504 of the Rehabilitation Act"; and

The governing language is "sufficiently vague as to allow wide latitude."

29. The response further warned that future inquiries seeking more than "general information" would receive no response.

30. This communication was not neutral guidance. It was deployed to justify refusal of accessible intake and to chill further assertion of rights.

E. The Sealed-Loop Obstruction

31. Defendants asserted that:

Accommodation decisions are made by judges;

Requests must be filed in an existing case;

No judge may act without a docketed case.

32. Defendants simultaneously refused to docket Plaintiff's case.

33. The result was a closed loop:

No docket → no judge;

No judge → no accommodation;

No accommodation → no docket.

34. This loop was entirely created and enforced by Defendants.

F. Comparative Proof of Non-Necessity

35. Other federal districts accepted Plaintiff's filings, assigned case numbers, and granted IFP status before transferring venue where appropriate.

36. Plaintiff's disability, signature format, and filing method were identical.

37. The divergent outcomes prove Defendants' conduct was not required by law, but chosen.

---

CLAIMS FOR RELIEF

COUNT I — Denial of Access to the Courts (Fifth Amendment)

38. Plaintiff incorporates all prior paragraphs.

39. Access to the courts is a fundamental constitutional right.

40. Defendants, acting under color of federal authority, obstructed Plaintiff's access before any judicial review could occur.

41. The obstruction was ministerial, intentional, and non-discretionary.

42. Plaintiff suffered actual injury, including loss of filing date, inability to seek judicial relief, and ongoing harm.

COUNT II — Equal Protection Violation

43. Defendants imposed filing requirements on Plaintiff that do not apply to represented litigants.

44. Pro se status and disability were used as bases for disparate treatment.

45. No rational basis, let alone heightened justification, supports the disparity.

COUNT III — Disability Discrimination and Deliberate Indifference

46. Plaintiff notified Defendants of disability and requested accessible procedures.

47. Defendants responded by denying applicability of disability-rights statutes, asserting "wide latitude," and refusing accommodation.

48. This constitutes deliberate indifference to known access barriers.

COUNT IV — Retaliation

49. Plaintiff engaged in protected activity by asserting disability-based access rights.

50. Defendants responded by threatening silence and non-response.

51. The threat would chill a reasonable person from asserting rights.

COUNT V — Ultra Vires Action / Abdication of Ministerial Duty

52. Defendants possess no authority to invent filing requirements beyond the Federal Rules.

53. Defendants' refusal to docket a compliant filing constitutes abdication of mandatory ministerial duty.

54. Such acts are not protected by immunity.

---

INJURY AND IRREPARABLE HARM

55. Plaintiff continues to suffer denial of judicial access.

56. Each day of non-docketing compounds prejudice and forecloses relief.

57. Monetary damages alone are insufficient.

---

PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Declare Defendants' "original signature" requirement unlawful and beyond Rule 11(a);

B. Declare that AOUSC guidance denying disability-rights applicability may not be used to obstruct court access;

C. Enjoin Defendants from refusing intake of compliant pro se filings;

D. Order docketing of Plaintiff's December 1, 2025 filing nunc pro tunc;

E. Require implementation of lawful, accessible intake procedures;

F. Award compensatory damages;

G. Award costs and fees;

H. Grant such other relief as justice requires.

---

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

---

CERTIFICATION

I certify under penalty of perjury that the foregoing is true and correct.

/s/ Rogelio Cruz, Jr.
Rogelio Cruz, Jr.
100% Permanently & Totally Disabled
United States Marine Corps
Austin, Texas

FINAL NOTE

I am right about the hydra.

This document is consolidated power.
If you sever AO, DDC bleeds.
If you sever DDC, AO poisons the record.
If you sever Garcia, the policy chain remains.

Fragmentation becomes fragmentation damage.

DAMAGES AND INJURY

I. CONCRETE DAMAGES (COMPENSATORY AND CONSTITUTIONAL)

Plaintiff is a 100% Permanently and Totally Disabled (P&T) United States Marine Corps veteran, as formally determined by the Department of Veterans Affairs. This designation reflects permanent service-connected injuries, including Post-Traumatic Stress Disorder (PTSD), which substantially limit Plaintiff's neurological, cognitive, and emotional functioning.
Defendants had actual notice of Plaintiff's disability status and PTSD, and were repeatedly informed that procedural delay, uncertainty, and obstruction materially exacerbate Plaintiff's condition.

Despite this knowledge, Defendants engaged in conduct that froze Plaintiff's access to justice, including refusal to docket a compliant filing, erasure of filing dates, and threats of future non-response after Plaintiff asserted disability-based access rights.

As a direct and proximate result of Defendants' actions, Plaintiff suffered concrete, compensable harm, including but not limited to:

a. Denial of timely access to the courts, resulting in loss of opportunity to seek emergency relief, toll statutory deadlines, and obtain judicial protection during exigent circumstances;
b. Chilling of protected activity, where Plaintiff was deterred from further asserting rights due to explicit threats that future inquiries would not receive a response;

c. Exacerbation of service-connected PTSD, including heightened hypervigilance, intrusive stress responses, cognitive fragmentation, sleep disruption, and psychological destabilization caused by prolonged administrative obstruction;
d. Functional impairment, where Plaintiff's ability to litigate, organize evidence, and engage meaningfully with judicial process was substantially degraded by Defendants' conduct;
e. Loss of procedural certainty, which for a permanently disabled veteran constitutes a distinct and serious harm, as unpredictability and institutional hostility are known triggers for PTSD decompensation.

Plaintiff's injuries are not speculative. They are consistent with, and aggravated by, the very conditions for which the United States has already determined Plaintiff will never recover.
Plaintiff seeks compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00), which represents a reasonable valuation of:
Constitutional injury to the fundamental right of court access;
Emotional and psychological harm inflicted through deliberate administrative obstruction;
The foreseeable and knowing aggravation of permanent service-connected disabilities;
The chilling and freezing of Plaintiff's pursuit of justice.
This amount is not punitive by design. It is remedial, deterrent, and commensurate with the gravity of the injury inflicted by government actors charged with safeguarding access to justice.

II. ABSTRACT DAMAGES (CONSTITUTIONAL, POLITIK-POETIC)

Beyond quantifiable harm, Defendants inflicted a structural injury that cannot be reduced solely to dollars.
Plaintiff survived war. Plaintiff survived service. Plaintiff survived injury severe enough that the United States itself declared him permanently and totally disabled.
What Defendants did was different.
Defendants did not wound Plaintiff with force.
They froze him.
They placed Plaintiff in a procedural limbo where:
Justice was always promised but never reachable;
Relief existed in theory but not in practice;
A judge was always "the next step," yet never allowed to appear.
For a person with PTSD, this condition is not neutral. It is re-traumatization.
The indefinite delay, the sealed loop, the refusal to docket, the threat of silence — these are not minor bureaucratic acts. They are institutional stressors that mirror captivity, powerlessness, and enforced helplessness.
Defendants chilled justice not by denying it outright, but by withholding its temperature until it became inert.
Plaintiff's injury is therefore also civic and constitutional:
The injury of being told the courthouse exists, while being barred at the threshold;
The injury of being read, acknowledged, and still refused;
The injury of knowing the system can hear you — and choosing not to open the door.
This Court is not asked to heal Plaintiff.

That is impossible.

This Court is asked to recognize the harm of obstruction, to name it, to assign responsibility, and to prevent its repetition.

/s/Rogelio Cruz Jr
rogeliocruzjr23@gmail.com
7472757377
10800 Tall Oak Trail, Austin, TX

SUPPLEMENTAL FINANCIAL DECLARATION
RE:

APPLICATION TO PROCEED IN FORMA PAUPERIS
28 U.S.C. § 1915

I, Rogelio Cruz, Jr., declare under penalty of perjury that the following is true and correct:
I am a 100% Permanently and Totally Disabled (P&T) United States Marine Corps veteran.
At the time of filing my Application to Proceed In Forma Pauperis, I stated that I had no funds available in my bank accounts.

I hereby clarify and correct that statement as follows:

a. My accounts with Navy Federal Credit Union (NFCU) are not merely at a zero balance;
b. They are overdrafted by approximately FIVE HUNDRED DOLLARS ($500.00).

As a result of this overdraft:
I have no accessible funds;
I am subject to negative balances and overdraft fees;

I am unable to pay the filing fee without foregoing basic necessities of life.
Despite repeated attempts to resolve or clarify my account status via email, NFCU has failed or refused to respond, further limiting my ability to access funds or obtain documentation.
This correction does not increase my financial capacity. It confirms present insolvency.
All other statements made in my Application to Proceed In Forma Pauperis remain true and correct.

EXIGENCY CLAUSE

This declaration is submitted under exigent circumstances.

Plaintiff's underlying litigation concerns ongoing denial of access to the courts, and delay in docketing or fee resolution compounds irreparable harm, including loss of filing dates, inability to seek timely judicial relief, and continued procedural freezing.